IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| DAN RIVER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 08-10726 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Related Docket No. 649** |

Objection deadline: July 13, 2015 at 4:00 p.m.
Hearing Date:  August 26, 2015 at 9:00 a.m.

## MOTION OF CHAPTER 7 TRUSTEE TO RECLASSIFY CLAIM OF LINENS

Jeoffrey L. Burtch, the Chapter 7 Trustee for the estate of Dan River, Inc., moves to reclassify a filed claim of certain Linens companies as follows.

### Jurisdiction

1.  This Court has jurisdiction over the Application under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding under the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  The statutory predicates for the relief requested is Section 503 of Title 11, and related jurisprudence.

### Dan River Background

3.  On April 20, 2008 (the "Dan River Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The Debtors are the following entities: Dan River Holdings LLC, Dan River, Inc., Dan River Factory Stores, Inc., Dan River International Ltd. and The Bibb Company LLC.

4. In December 2008, an Order was entered converting the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code (hereinafter, the "Dan River Cases"). Jeoffrey L. Burtch was appointed as the interim trustee in the Dan River Cases, and serves as the Trustee pursuant to 11 U.S.C. Section 702(d) (the "Trustee", or "Dan River Trustee").

5. According to the Debtors, the Dan River Debtors were leading designers, marketers and manufacturers of products for the home fashions and apparel fabrics markets. D.I. 9 (Affidavit in support of First Day Motions).

6. The Trustee is currently reviewing and analyzing certain claims filed in these jointly-administered cases, included claims that assert Chapter 11 administrative expense status in the Dan River, Inc. case ("DR Inc."). The Dan River Cases are not substantively consolidated.

**Procedural History of the Linens Cases, and the Linens' Claim**

7. Linens Inc. and certain of its affiliated companies filed Chapter 11 petitions in this Court on May 2, 2008 (the "Linens Petition Date"). The cases are jointly administered under Case No. 08-10832-CSS (hereinafter, the "Linens Cases"). According to filings in the Linens Cases, Linens Inc. and the affiliated companies in bankruptcy (hereinafter "Linens") was a large specialty retailer of home textiles, housewares, and decorative home accessories that previously operated in over 500 retail stores in United States and Canada. Case No. 08-10832-CSS, D.I. 12, ¶¶6, 7 (Affidavit in support of First Day Motions).

8. The Linens Cases converted to cases under Chapter 7 on February 26, 2010. Linens Cases, D.I. 5924. Charles M. Forman was appointed as interim trustee, *Id.*, D.I. 5928 and serves as Trustee for the Linens Cases (the "Linens Trustee").

9. Prior to conversion of the Linens Cases, the Linens Debtors filed in the Dan River Cases a Request for Allowance and Payment of an Administrative Expense. D.I. 649 (the

"Linens Administrative Expense Claim"). A copy of the Linens Administrative Expense Claim is attached as Exhibit 1 to this Motion.[2]

10. There are two separate claims contained in the Linens Administrative Expense Claim, a Preference Claim (as defined below), and a Section 542 claim based upon Unused Credits (as defined in the Linens Administrative Expense Claim). *See generally*, D.I. 649, ¶¶9, 10. The Section 542 claim is not the subject of this Motion and is unaffected by the relief requested.

### The Linens Preference Claim

11. The Linens Administrative Expense Claim includes a claim in the amount of $3,007,669.48 based upon 11 U.S.C. § 547(b) (the "Preference Claim"). More specifically, Linens asserts that DR Inc. received transfers from LNT Merchandising Company LLC ("LNT") in the total amount of $3,007,669.48. The transfers that are the subject of this claim are stated in the Exhibit A attached to the filed Linens Administrative Expense in the Dan River Cases (the "Alleged Exhibit A Transfers"). Linens seeks Chapter 11 administrative expense claim status for the full amount of the Alleged Exhibit A Transfers pursuant to 11 U.S.C. 503(b)(1) and related sections of Title 11 and related jurisprudence. The Dan River Trustee disagrees with Linens' assertion of Chapter 11 administrative expense status for the Preference Claim; hence this Motion is filed.

### Relief Requested, Facts Assumed to Be True, And Legal Argument

12. The Trustee seeks entry of an order in the form attached. Entry of this order will reclassify the Linens Administrative Expense Claim with respect to the Preference Claim from

---

[2] The referenced claim is of public record. The referenced claim is being filed with the Court with this Motion, and is being served upon the Linens Trustee, but is not otherwise being served. Any party of interest who wishes to obtain a copy of any referenced claim can obtain a copy by emailing the undersigned at asinger@coochtaylor.com.

3

the asserted Chapter 11 administrative expense status to a claim with general unsecured status, with all rights otherwise reserved to the parties with respect to the merits of the Preference Claim. Entry of this order will facilitate the administration of the chapter 7 estate of DR Inc. by eliminating a very large alleged Chapter 11 administrative expense and allowing the Trustee to better understand the potential Chapter 11 administrative claims as filed and related economics of the DR Inc. case. Entry of this order requires the parties and the Court to focus upon only one primary set of facts that can be assumed to be true for the purpose of framing a legal issue, thus reducing unneeded legal fees on both sides, and, to the extent necessary, maximizing judicial efficiency by asking the Court to rule upon one discrete legal issue. These matters are discussed in more detail below in paragraphs 13 through 29.

13.   For the purposes of this Motion and to obtain the requested narrow legal ruling, the Dan River Trustee accepts certain allegations of the Linens Administrative Expense Claim to be true. These are set forth below.

### The Alleged Transfers

14.   According to Exhibit A of the Linens Administrative Expense Claim, LNT transferred the amount of $1,613,853.90 to DR Inc. on February 20, 2008, and $639,074.83 to DR Inc. on March 5, 2008.

15.   Also according to Exhibit A of the Linens Administrative Expense Claim, DR Inc. issued credits to Linens for, among other things, overpayment of goods, damage allowances and freight allowances (the "Credits"). D.I. 649, ¶4. According to Exhibit A of the Linens Administrative Expense Claim, DR Inc. issued Credits to LNT in the total amount of $754,740.75 for the time period February 20, 2008 through March 5, 2008, inclusive.

16.   The alleged transfers stated above in paragraphs 14 and 15 above total $3,007,669.48 (the amount of the Preference Claim), and are the subject of this Motion.

4

17.  Linens asserts that each of these Alleged Exhibit A Transfers are entitled to Chapter 11 administrative expense status pursuant to 11 U.S.C. 503(b)(1) and related jurisprudence.

18.  A claimant who requests administrative expense priority has the factual and legal burden of proof as to the administrative expense of its claim. *See generally, Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994) (claimants who seek payment ahead of other unsecured claims bear the burden of establishing that their claim qualifies for priority status); *In re G-I Holdings, Inc.*, 308 B.R. 196, 202-203 (Bankr. D. N.J. 2004).

19.  Section 503(b)(1) states:

"§ 503. Allowance of administrative expenses

\*\*\*

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including —

(1) (A) the actual, necessary costs and expenses of preserving the estate."

20.  The Third Circuit Court of Appeals has held that in order for an administrative expense claim under Section 503(b)(1) to succeed, the debt must arise from a transaction with the debtor-in-possession, and the consideration supporting the claimant's right to payment "must be beneficial to the debtor-in-possession in the operation of the business." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 532-33 (3d Cir. 1999) (quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.*), 536 F.2d 950, 954 (1st Cir. 1976)). Priority claims such as administrative expense claims are narrowly construed. *E.g., Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir.1986).

### There was No Transaction Between LNT and Debtor-in-Possession DR Inc.

21. This is an easy case in which to apply the above legal standard to the facts that the Dan River Trustee assumes to be true for the purposes of this Motion. All of the Alleged Exhibit A Transfers occurred in the date range February 20, 2008 through March 5, 2008. This date range is <u>before</u> the Dan River Petition Date of April 20, 2008. Thus, to the extent the transfers occurred, those transfers were not transactions with the debtor-in-possession (the "DIP").

### The Alleged Transfers Did not Benefit the Bankruptcy Estate of DR Inc.

22. While it is a <u>necessary</u> element for there to be a transaction between the claimant and the DIP to qualify as a administrative expense claim, *e.g.*, D.I. 649, ¶7 (citing the "absolute requirement" of *Beneke Company, Inc. v. Economy Lodging Systems*, 234 B.R. 691, 697 (6th Cir. 1999)), Linens properly recognizes that a postpetition claim does not always qualify as an administrative expense claim.

23. Specifically, and as acknowledged by Linens, <u>in addition</u> to a postpetition transactional element, for an obligation to constitute an administrative expense under Section 503(b)(1)(B)(i) of Title 11, the obligation must be an actual, necessary cost of preserving the estate. *See generally*, D.I. 649, ¶8 (citing Bankruptcy Code section) (emphasis supplied)

24. Almost by definition, the alleged transfers stated on Exhibit A do not satisfy this independent second prong. The alleged transactions were between LNT and the pre-petition DR Inc. The alleged transfers stated on Exhibit A did not preserve the estate of Inc. - the alleged transfers occurred before the Dan River Petition Date. LNT added no value to the DR Inc. estate. Thus, Linens' legal argument fails as a matter of law. *See generally In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 532-33 (3d Cir. 1999).

6

25.  In its Linens Administrative Expense Claim, Linens creatively tries to construct an argument in support of a legal finding of an administrative expense where no reasoned argument exists. First, Linens argues that its claim is a "postpetition claim." D.I. 649, ¶6. This is a short-hand phrase sometimes used to re-state the *O'Brien* requirement that there be transaction between the claimant and the DIP. As stated above, there was no transaction between LNT with DR Inc. during the chapter 11 case of DR Inc.

26.  Linens "postpetition claim" argument also fails because it focuses on the framework and context of the Linens Cases. Whether the claim of Linens is a post-petition claim in the context of the Linens Cases, that characterization is of no consequence here. That characterization does not assist the Court in determining whether alleged transfers were "the actual, necessary costs and expenses of preserving the [Dan River] estate." *See generally*, D.I. 649, ¶8.

27.  Linens has cited the case of *Wallach v. Frink America, Inc. (In re Nuttall Equipment Co., Inc.)*, 188 B.R. 732 (Bankr. W.D.N.Y. 1995) (hereinafter, "*Frink*"). *Frink* changes neither the analysis nor the legal result here. In Frink, like here, there were two companies in bankruptcy proceedings, and one of the companies in bankruptcy asserted a preference claim against the other company in bankruptcy. That is about the full extent of the similarity between *Frink* and the facts here.

28.  In *Frink*, the first company to file bankruptcy was Frink America ("Frink"). It filed a Chapter 11 case in June 1992. *Id.* at 735. It continued to operate, and indeed, eventually obtained an order confirming its plan of reorganization on November 3, 1993. *Id.* <u>After</u> June 1992, and before November 1993, Frink did business with Nuttall Equipment ("Nuttall"). <u>After</u> June 1992, . . . indeed about one year after Frink's petition date, in May, June and August of

7

1993, Nuttall made $22,000.00 in payments to Frink. *Id.* at 735 and 739-40. Nuttall filed its own Chapter 11 petition on August 20, 1993, and the parties in the *Frink* case stipulated that the $22,000.00 in payments in May, June and August of 1993 occurred within the 90 day preference window stated in Section 547(b). The Nuttall bankruptcy case later converted to a Chapter 7 case.

29.  The ultimate issue before the *Frink* Court was whether Frink's liability for preferential payments it received in May, June and August of 1993 was discharged by the November 3, 1993 order confirming Frink's plan. *Id.* at 735. In that context, and in connection with the section 1141(d)(1) issue, and other provisions of the Bankruptcy Code addressing the discharge issue, the Nuttall Chapter 7 Trustee asserted that the preference obligation of Frink was an administrative expense in the Frink bankruptcy case. *Id.* at 736. In that context, the *Frink* Court stated that "that liability upon preference claims is an ordinary cost of doing business." *Id.* at 739. However, as should be readily apparent to this Court from the above recitation of the material facts in *Frink*, the transfers from the preference plaintiff (Nuttall) to the preference defendant (Frink) occurred <u>after</u> Frink's Chapter 11 petition was filed. Therefore, if anything, the Frink case supports the Trustee's request for relief and does <u>not</u> support the administrative expense status sought by the Linens Administrative Expense Claim with respect to the Preference Claim.

### Reservation of Rights

30.  The Trustee seeks a ruling of law on facts as asserted by Linens. In the event that the Court should not grant the Motion, there is discovery that will need to be conducted concerning the alleged Exhibit A Transfers, and related fact issues in connection with a preference action. The Trustee reserves all his rights with respect to the facts as asserted by Linens, all other legal issues, including but not limited to whether the each of the Credits

8

constitutes a "transfer of an interest of the debtor" within the meaning of Section 547(b), and all his rights to conduct discovery, on an as needed basis.

WHEREFORE the Trustee respectfully requests that the Court grant the relief requested. A form of order is attached.

Dated: June 24, 2015

COOCH AND TAYLOR, P.A.

/s/ Adam Singer
Adam Singer (No. 2472)
1000 West Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 984-3800
E-mail: asinger@coochtaylor.com

*Counsel to Jeoffrey L. Burtch, Chapter 7 Trustee*